1  **WO**

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8   MARILYN GENE SUMMERS,              )
                                       )
9             Petitioner,              )
                                       )    No.  CV 03-620-TUC-CKJ
10  vs.                                )
                                       )
11  DORA B. SCHRIRO, et al.,           )        **ORDER**
                                       )
12            Respondents.             )
    _____)

13

14        On or about December 12, 2003, Petitioner Marilyn Gene Summers ("Summers")

15  filed the instant Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant

16  to 28 U.S.C. § 2254.  An Amended Petition was filed on April 2, 2004.  Respondents filed

17  an Answer.   The Petition was denied and the matter dismissed on June 7, 2005.

18  Following reversal and remand by the Ninth Circuit Court of Appeals, Respondents filed

19  a Supplemental Answer and Summers filed a Traverse.  Also pending before the Court

20  is Summers' Motion for Ruling [Doc. # 32].

21  I.  *Factual and Procedural Background*

22        The Court of Appeals of Arizona stated the facts[1] and state procedural history as

23  follows:

24        Petitioner Marilyn Gene Summers, a paralegal who specialized in probate and

25

26  _____

27        [1]As these state court findings are entitled to a presumption of correctness and
    Summers has failed to show by clear and convincing evidence that the findings are
28  erroneous, the Court hereby adopts these factual findings. *See Wainwright v. Witt*, 469 U.S.
    412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985), and 28 U.S.C. § 2254(e)(1).

conservator estates and who served as a court-appointed fiduciary, was charged with more than eighty felony counts in three indictments for having misappropriated the funds of at least eighty-nine victims during a period of about ten years, which resulted in losses of over two million dollars.

Answer, Ex. I, pp. 1-2.

On October 15, 1997, and October 20, 1997, Marilyn Gene Summers ("Summers") was examined by psychologist Gary Perrin, Ph.D., upon a referral by counsel who requested Summers be examined relative to her general psychological status as it may relate to the criminal charges against her.  Supp. Answer, Ex. R, internal exhibit.  Dr. Perrin administered standardized tests and reviewed the records of Dr. Steven Bupp, Gale Calloll, Ph.D., and John Tinone, Ph.D.  In his report, Dr. Perrin stated:

Ms. Summers appeared her stated age.  She was well-oriented in all spheres.  Attention, concentration, and memory abilities were grossly intact, although she reported having some deficient attentional abilities related to her depression.  Insight and judgment were variable.  Range of affect was within normal limits.  Mood was variable from euthymic to dysphoric.  Rate of speech was consistent with emotional content.  Psychomotor activity was within normal limits.  There were no indications that she was experiencing auditory or visual hallucinations, delusions, or other signs of psychosis or mania at the time of the examination.  There were no indications that she presented a foreseeable risk of danger to herself or others.

* * * * *

. . . The test results reflected her current level of substantial psychological distress.  There were no indications that she was experiencing a psychotic disorder or a disorder related to impaired brain function.

Ms. Summers' test results reflected the presence of high levels of anxiety, tension, self-doubt, inadequacy and guilt.  She tends to ruminate frequently at present, has difficulty concentrating, and is preoccupied with her current problems, feelings of guilt, and worries about her future.  She reportedly views herself as a condemned person.   She also has symptoms of depression, including depressed mood, disrupted sleep, feelings of hopelessness, withdrawal, and low levels of energy.

* * * * *

. . . Ms. Summers does not exhibit a profile that would be classified as characteristic of psychopathy.

. . . It appears that Ms. Summers did not have a major psychological disorder at the time of the alleged offenses.  Her current depression and anxiety appear to be the effects of her current legal situation.  Although Ms. Summers utilized the terms "addiction" and "compulsion" to describe her behavior, there is no evidence that she was addicted or had compulsions in a clinical or diagnostic sense.

1   *Id.*

2       On November 12, 1997, Summers entered into a plea agreement that provided that

3   she would plead guilty to five counts[2] and would be subject to a sentence range from one

4   to 32.5 years in prison at the discretion of the court.  On December 15, 1997, Summers

5   was sentenced to a total of 20 years imprisonment, seven years of consecutive probation,

6   and ordered to pay restitution in an amount over $1.5 million.

7       On March 10, 1998, Summers filed a Notice of Post-Conviction Relief pursuant

8   to Ariz.R.Crim.P. 32.  The Petition for Post-Conviction Relief was filed on May 19, 2000.

9   The post-conviction court denied relief on March 7, 2001.  The Arizona Court of Appeals

10  summarized Summers' ineffective assistance claims as follows:

11          In her Rule 32 petition, Summers claimed that trial counsel had been ineffective
            for failing to seek a change of venue and that, as a result of the pretrial publicity,
12          which included a report of the charges against her in a probate newsletter authored
            by then-presiding probate judge Margaret Houghton, other judges on the same
13          court had a conflict of interest and would likely be biased against her.
            Additionally, she contended that counsel had coerced her into entering her guilty
14          plea, that counsel had failed to consider her mental status at the time he urged her
            to enter the plea, and that counsel had failed to thoroughly investigate her mental
15          status,  She claimed that, had counsel investigated her mental status, he would
            have discovered she suffers from a mental illness, specifically, a severe personality
16          disorder.

17          Summers attached to the Rule 32 petition the report of her April 2000
            psychological evaluation by Joseph Geffen, Ph.D., in which he diagnosed her as
18          suffering from a personality disorder but stated that she was relatively stable at
            that time.  He also reiterated her statements to him about how confused she claims
19          she was when she entered her guilty plea because of the medication she was taking
            for depression, sleep difficulties, and stress because of the pending charges.
20          Summers also attached the affidavit of defense counsel in which he conceded that
            he might have been ineffective in not further investigating her mental status at the
21          time she entered her plea.  Summers argued that, had counsel discovered the depth
            of her mental problems and the severity of her purported confusion, he would have
22          been more careful in presenting and explaining the plea agreement to her.  She
            insisted that she had not completely understood the plea agreement and the
23          consequences of entering into it, that counsel had misinformed her (or she simply
            had not understood), particularly, about the terms of the agreement, the sentencing
24          possibilities, and that her guilty plea had not been knowing, voluntary, or
            intelligent.  Summers also contended that counsel had been ineffective in not
25          hiring an accountant to "determine a realistic figure of restitution" and, therefore,
            he had been unprepared to represent her at the restitution hearing.  Finally, she

26

27          [2]Summers was convicted of two counts of perjury by a false sworn statement, two
28  counts of theft by control or conversion, and one count of fraudulent scheme and artifice.

claimed the court had erred by including in its order of restitution interest on the amounts it had ordered her to pay.

Answer, Ex. I, pp. 2-3.   Summers also raised claims that her guilty plea was not voluntarily and intelligently entered into and that it was improper to order interest on the restitution.  The Court of Appeals granted review but denied relief on April 16, 2002. The Supreme Court of Arizona summarily denied review on October 31, 2002.  The Court of Appeals issued its mandate on December 12, 2002.

On December 12, 2003, Summers' filed a Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254.  On March 9, 2004, the court issued an Order finding the original petition contained both exhausted and unexhausted claims.  The court dismissed without prejudice the original petition, "leaving [Summers] with the choice of returning to state court to exhaust her claims or of amending or resubmitted the habeas petition to present only exhausted claims to the district court." March 9, 2004, Order, p.3.  The court advised Summers that, "by amending the Petition to present only exhausted claims, Petitioner will be presumed to have deliberately waived her right to raise any constitutional errors or deprivations other than those set forth in her amended habeas petition, and . . . that all grounds alleged in her original Petition which are not alleged in any amended petition will be waived." *Id*. at 4.  An Amended Petition was filed on April 2, 2004.  The Amended Petition asserts that Summers was denied effective assistance of counsel in connection with her change of plea and sentencing. Specifically, Summers asserts counsel was deficient in the following ways:

1.   Although counsel believed Summers suffered from a serious mental illness, counsel failed to investigate Summers' capacity to appreciate the wrongfulness of her conduct at the time of the offenses.

2.   Counsel failed to consult with or retain an accountant to review the thousands of pages of documents, many of which related to financial records.  Additionally, counsel failed to properly investigate and rebut the state's accounting testimony.

3.      Counsel failed to seek a change of venue even though the charges arose from probate and conservatorship matters adjudicated in the Pima County Superior Court.

4.      Counsel did not seek or obtain a cap on the prison sentence she was facing.

5.      Counsel was unaware of statutory sentencing changes which applied to offenses that occurred after January 1, 1994, and which substantially reduced the availability of early release credits.  Additionally, counsel misinformed Summers about early release eligibility.

6.      Counsel failed to inform Summers that her sentences could be imposed consecutively.

7.      Counsel failed to adequately investigate or challenge in court Summers' mental capacity to accept a change of plea or otherwise participate in change of plea proceedings.

8.      Although aware of Summers' symptoms of impaired capacity to rationally evaluate a plea offer, counsel only permitted Summers eight minutes to consider the plea offer before accepting or rejecting it.

9.      Counsel failed to advise Summers that some of the claims that she was pleading guilty to could not be proven by the State.

10.     Counsel failed to object to the introduction of inadmissible evidence at the time of sentencing.

11.     Counsel never discussed the contents of the state's sentencing memorandum with her, nor did counsel ask her to assist him in refuting factual allegations contained in the memorandum.

12.     Counsel never sought a change of venue and failed to voir dire the sentencing judge regarding a memorandum that included damning statements about Summers that was circulated by the presiding probate judge of the Pima County Superior Court.

13.     Counsel failed to address the sentencing court's presumptions regarding

1    consecutive sentences.

2    14.    Counsel failed to object to the assessment of interest on the restitution

3           orders which was prohibited under state law.

4    *See*, Amended Petition, pp. 2-5.   Summers also asserts that her guilty plea was not

5    knowingly, intelligently, and voluntarily made on the following grounds:

6    1.    Counsel misinformed Summers regarding early release eligibility.

7    2.    Counsel failed to inform her that her sentences could run consecutively.

8    3.    Counsel failed to adequately investigate and challenge her mental capacity

9           to accept a change of plea or otherwise participate in change of plea

10          proceedings.

11   4.    Summers was not permitted sufficient time to decide whether to accept or

12          reject the plea offer.

13   5.    Counsel failed to advise her that some of the claims that she was pleading

14          guilty to could not be proven by the state.

15   *Id*. at 5-6.[3]

16        Respondents filed an Answer on July 2, 2004.   On June 7, 2005, a district court

17   judge denied the petition as time-barred.   The case was reassigned to this Court.

18   Summers appealed to the Ninth Circuit Court of Appeals.   On March 13, 2007, the

19   appellate court issued an opinion holding that Summers' Ariz.R.Crim.P. 32 "of-right

20   proceeding was a form of direct review under § 2244(d)(1)(A)[.]"   *Summers v. Schriro*,

21   481 F.3d 710, 717 (9th Cir. 2007).   Therefore, the "AEDPA's statute of limitations did

22   not begin to run until 90 days after the Arizona Supreme Court denied her petition for

23   review on October 31, 2002 . . .   Therefore, Summers had until January 29, 2004 to file

24   her petition for federal habeas relief, and her December 12, 2003 petition was timely

25   _____

26        [3]Included in the original Petition, but not in the Amended Petition, is a claim that
     Summers' sentence constitutes cruel and unusual punishment and post-conviction counsel
27   was ineffective for failing to raise that issue.

28

1   filed." *Id*.  The appellate court reversed and remanded this matter.

2       On April 14, 2008, Respondents filed a supplemental Answer.  On June 27, 2008,

3   Summers filed a Traverse.

4

5   II.  *Standard of Review*

6       Federal courts may consider a state prisoner's petition for habeas relief only on the

7   grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the

8   United States.  *See Reed v. Farley*, 512 U.S. 339, 347, 114 S.Ct. 2291, 2296, 129 L.Ed.2d

9   271 (1994).  Indeed, a habeas corpus petition by a person in state custody:

10      shall not be granted with respect to any claim that was adjudicated on the merits
        in State court proceedings unless the adjudication of the claim (1) resulted in a
11      decision that was contrary to, or involved an unreasonable application of, clearly
        established Federal law, as determined by the Supreme Court of the United States;
12      or (2) resulted in a decision that was based on an unreasonable determination of
        the facts in light of the evidence presented in the State court proceeding.
13
    28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495,
14
    1523, 146 L.Ed.2d 389 (2000).  General improprieties occurring in state proceedings are
15
    cognizable only if they resulted in fundamental unfairness and consequently violated a
16
    petitioner's Fourteenth Amendment right to due process.  *See generally, Estelle v.*
17
    *McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991).
18
        This Court must review claims consistent with the provisions of the Antiterrorism
19
    and Effective Death Penalty Act of 1996 ("AEDPA").  "The Act limits the ability of
20
    federal courts to reexamine questions of law and mixed questions of law and fact."
21
    *Jeffries v. Wood*, 114 F.3d 1484, 1498 (9th Cir. 1997).  Indeed, the AEDPA creates "an
22
    independent, high standard to meet before a federal court may issue a writ of habeas
23
    corpus to set aside state-court rulings."  *Uttecht v. Brown*, 551 U.S. 1, 127 S.Ct. 2218,
24
    2224, 167 L.Ed.2d 1014 (2007), *citations omitted.*  This Court may only overturn a state
25
    court finding if a petitioner shows by clear and convincing evidence that the finding was
26
    erroneous.  *See* 28 U.S.C. § 2254(e)(1).  An "unreasonable application of clearly
27
    established law" exists if the state court identified the correct governing legal principle
28

                                        - 7 -

from Supreme Court decisions but unreasonably applied that principle to the facts of the case.  *See Taylor.*

III.  *Statute of Limitations*

Under the AEDPA, a state prisoner must generally file a petition for writ of habeas corpus within one year from the date upon which his judgment became final or the expiration of time for seeking such review.  *See* 28 U.S.C. § 2244(d)(1)(A).  As determined by the Ninth Circuit, Summers' Petition was timely filed.

IV.  *Exhaustion of State Remedies*

Before a federal court may review a petitioner's claims on the merits, a petitioner must exhaust her state remedies, i.e., have presented in state court every claim raised in the federal habeas petition.  *See Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999) (a state prisoner in a federal habeas action must exhaust his claims in the state courts "by invoking one complete round of the State's established appellate review process" before he may submit those claims in a federal habeas petition); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999).  Exhaustion of state remedies is required in order to give the "State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights . . . To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004), *internal quotation marks and citations omitted*.

In Arizona, exhaustion is satisfied if a claim is presented to the Arizona Court of Appeals.  A discretionary petition for review to the Supreme Court of Arizona is not

necessary for purposes of federal exhaustion.[4]  *Swoopes*, 196 F.3d at 1010; *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989) (in non-capital cases, state remedies are exhausted by review by the court of appeals).  A claim is "fairly presented" if the petitioner has described the operative facts and legal theories on which his claim is based.  *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).  In state court, the petitioner must describe not only the operative facts but also the asserted constitutional principle.  The United States Supreme Court has stated:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.  If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).  A petitioner does not ordinarily "fairly present" a federal claim to a state court if that court must read beyond a petition, brief, or similar papers to find material that will alert it to the presence of a federal claim.  *See e.g., Baldwin*, 541 U.S. at 33 (rejecting contention that petition fairly presented federal ineffective assistance of counsel claim because "ineffective" is a term of art in Oregon that refers only to federal law claims since petitioner failed to demonstrate that state law uses "ineffective assistance" as referring only to federal law rather than a similar state law claim); *Harless*, 459 U.S. at 6 (holding that mere presentation of facts necessary to support a federal claim, or presentation of state claim similar to federal claim, is insufficient; petitioner must "fairly present" the "substance" of the federal claim); *Hivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner

---

[4]In light of the Ninth Circuit's specific consideration in *Swoopes* of *Sandon*, Arizona's procedurals laws, and the Supreme Court's response to certified questions from the Ninth Circuit in *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998), this Court finds a discretionary petition for review to the Supreme Court is not necessary for purposes of federal exhaustion.  *See also Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005).

1    presented claim in state court only on state grounds), *cert. denied*, 529 U.S. 1009 (2000);

2    *Gatlin v. Madding*, 189 F.3d 882 (9th Cir. 1999) (holding that petitioner failed to "fairly

3    present" federal claim to state courts where he failed to identify the federal legal basis for

4    his claim), *cert. denied*, 52 U.S. 1087.

5

6    V.  *Procedural Default*

7         The Ninth Circuit Court of Appeals has explained the distinction between

8    exhaustion and procedural default as follows:

9         The exhaustion requirement is distinct from the procedural default rule.  The
           exhaustion doctrine applies when the state court has never been presented with an
10         opportunity to consider a petitioner's claims and that opportunity may still be
           available to the petitioner under state law.  In contrast, the procedural default rule
11         barring consideration of a federal claim applies only when a state court has been
           presented with the federal claim, but declined to reach the issue for procedural
12         reasons, or if it is clear that the state court would hold the claim procedurally
           barred.  Thus, in some circumstances, a petitioner's failure to exhaust a federal
13         claim in state court may *cause* a procedural default.  A habeas petitioner who has
           defaulted his federal claims in state court meets the *technical* requirements for
14         exhaustion; there are no state remedies any longer 'available' to him.  A federal
           claim that is defaulted in state court pursuant to an adequate and independent
15         procedural bar may not be considered in federal court unless the petitioner
           demonstrates cause and prejudice for the default, or shows that a fundamental
16         miscarriage of justice would result if the federal court refused to consider the
           claim.
17

18   *Cassett v. Stewart*, 406 F.3d 614, 621 n. 5 (9th Cir. 2005), *internal quotation marks and

19   citations omitted*.  In other words, a habeas petitioner's claims may be precluded from

20   federal review in either of two ways.  First, a claim may be procedurally defaulted in

21   federal court if it was actually raised in state court but found by that court to be defaulted

22   on state procedural grounds.  *Coleman*, 501 U.S. at 729-30.  Second, the claim may be

23   procedurally defaulted in federal court if the petitioner failed to present the claim in a

24   necessary state court and "the court to which the petitioner would be required to present

25   his claims in order to meet the exhaustion requirement would now find the claims

26   procedurally barred."  *Id*. at 735 n. 1.  This is often referred to as "technical" exhaustion

27   because although the claim was not actually exhausted in state court, the petitioner no

28   longer has an available state remedy.  *See id*. at 732 ("A habeas petitioner who has

defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him."). If a claim is procedurally defaulted, it may not be considered by a federal court unless the petitioner demonstrates cause and prejudice to excuse the default in state court, or that a fundamental miscarriage of justice would result. *Id.* at 753; *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). If a claim has never been fairly presented to the state court, a federal habeas court may determine whether state remedies remain unavailable. *See Harris v. Reed*, 489 U.S. 255, 269-70, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Teague v. Lane*, 489 U.S. 288, 298-99, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

A.  *Ineffective Assistance of Counsel – Failure to Investigate Summer's Capacity to Appreciate the Wrongfulness of Her Conduct at the Time of the Offenses*

Summers asserts that, although counsel believed Summers suffered from a serious mental illness, counsel failed to investigate Summers' capacity to appreciate the wrongfulness of her conduct at the time of the offenses. Respondents argue that this issue was not presented to the post-conviction court or to the Arizona Court of Appeals – although Summers asserted in post-conviction proceedings that counsel was ineffective, she did not present this basis as an ineffective assistance of counsel claim. Summers argues, however, that, although her federal claims have been reformulated from the state claims, the substance of the federal claims have been fairly presented. *Tampua v. Shimoda*, 796 F.2d 261, 262 (9th Cir. 1986), *abrogated on other grounds*. The Ninth Circuit Court of Appeals has subsequently determined, however, that new bases for ineffective assistance of counsel claims that were not raised in the state proceedings are not exhausted. *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005). The Court's review indicates that this claim was presented to the post-conviction court. *See*, Supp. Answer, Ex. M, pp. 4-5 (In discussing the report of Dr. Joseph Geffen, Summers states that "[i]t was incumbent on trial counsel to obtain a proper evaluation of [Summers] . .

. for purposes of mitigation.")[5]  However, this claim was not presented to the Arizona Court of Appeals.  Indeed, Summers appeared to be asserting the opposite in her Petition for Review: "[Summers] is only claiming that the emotional distress, in conjunction with the other facts of the case, created a situation which could not have rendered the plea to be entered into voluntarily. . . .   The mental state had nothing to do with the actual charges.  It does relate, however, to the acceptance of the plea agreement[.]"  Supp. Answer, Ex. V, p. 19.  The Court finds this claim was not fairly presented to the state appellate court and, therefore, this claim has not been exhausted.

Moreover, if Summers would now be procedurally barred from presenting this issue to the state courts, this claim would be technically exhausted.  Summers asserts that she may be able to return to the state courts to assert a claim of ineffective assistance of post-conviction counsel.  However, if Summers were to fairly present this issue in a subsequent Petition for Post-Conviction Relief, such presentation would be untimely.  Moreover, this claim does not qualify for any of the timeliness exceptions:

(d)    The person is being held in custody after the sentence imposed has expired;
(e)    Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence . . . ;
(f)    The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
(g)    There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
(h)    The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Rules 32.1 and 32.4(a), Ariz.R.Crim.P.  Such a new petition, therefore, would be subject to summary dismissal.  *State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App.

_____

[5]The Petition for Post-Conviction Relief also states, however, that counsel "considered [Summer's mental condition as it related to the offenses, and he was unable to show that she had suffered from any mental condition during the time that she actually committed the offenses."  Supp. Answer, Ex. M, p.4.

1999); *State v. Jones*, 182 Ariz. 432, 897 P.2d 734 (App. 1995); *Moreno v. Gonzales*, 192 Ariz. 131, 135, 962 P.2d 205, 209 (1998) (timeliness is a separate inquiry from preclusion). This claim is technically exhausted and, therefore, procedurally defaulted.[6] *Park v. California*, 202 F.3d 1146, 1150-51 (9th Cir. 2000) (federal habeas review is precluded where prisoner has not raised his claim in the state courts and the time for doing so has expired).

B. *Ineffective Assistance of Counsel – Failure to Inform Summers that Her Sentences Could be Imposed Consecutively*

Summers asserts that counsel failed to inform Summers that her sentences could be imposed consecutively. Respondents argue that this issue was not presented to the post-conviction court or to the Arizona Court of Appeals. Summers asserts that the claim was presented as a failure to provide sufficient information for Summers to conduct a "risk-benefit" analysis. *See* Supp. Answer, Ex. M, pp.7-8 ("Because of the manner in which the plea was negotiated, the defendant was deprived of the basic information she needed to be able to make an informed decision on whether to accept or reject the plea. She needed to make the proper risk-benefit analysis in order to make a voluntary, intelligent and reasoned decision of whether to accept or reject the plea."); *see also id.*, at p. 20, *citations omitted* ("It is impossible to effectively perform the risk-benefit analysis if either the risk or the benefit is unknown or erroneous. The defendant was

---

[6]Because this claim is procedurally defaulted pursuant to Rule 32.4(a), Ariz.R.Crim.P., this Court need not determine whether the claim is of "sufficient constitutional magnitude" to require a knowing, voluntary, and intelligent waiver such that the claim is precluded pursuant to *Cassett*. Moreover, the procedural timeliness bar of Rule 32.4(a), Ariz.R.Crim.P., is clear, consistently applied, and well established. *Powell v. Lambert*, 357 F.3d 871 (9th Cir. 2004); *see e.g., State v. Rosario*, 195 Ariz. 264, 987 P.2d 226 (App. 1999) (where petition did not raise claims pursuant to Rule 32.1(d) through (g), the petition could be summarily dismissed if untimely); *Moreno v. Gonzales*, 192 Ariz. 131, 962 P.2d 205 (1998) (timeliness provision of Rule 32.4(a) became effective September 20, 1992); *State v. Jones*, 182 Ariz. 432, 897 P.2d 734 (App. 1995) (Rule 32.4(a) was amended to "address potential abuse by defendants caused by the old rule's unlimited filing periods").

1  entitled to rely on the actual facts in order to make a risk-benefit analysis to determine
2  whether to enter into the plea.  Without the proper information from counsel, the
3  defendant was unable to make an intelligent and voluntary plea through the risk-benefit
4  analysis.  She was effectively prevented from make a clear and rational decision whether
5  to plead guilty or withdraw from the plea and proceed to trial.  The defendant needed to
6  be apprised of all aspects of the case, charges, defenses, and potential exposure, so that
7  she would properly weigh the risk versus the benefit in accepting or rejecting the plea.").[7]
8  However, there is no discussion that the risk-benefit analysis did not include
9  consideration of consecutive sentences based on counsel's ineffectiveness.  Indeed, the
10  only statement possibly related to this issue was set forth in the Petition for Post-
11  Conviction Relief:  "[Counsel] stated that, at the time, there was a presumption that the
12  duration of imprisonment for the offenses would be run concurrently, and he found it
13  strange when the court indicated that there were no factors to cause her to consider
14  running them concurrently.  However, [counsel] never challenged that statement."  Supp.
15  Answer, Ex. M, p. 12.  This discussion addresses whether counsel should have challenged
16  the sentencing court, not whether counsel had discussed consecutive sentences with
17  Summers.  Indeed,  Summers stated in her Petition for Review that "she knew the
18  available consequences of the plea."  Supp. Answer, Ex. V. p. 18.  Moreover, in asserting
19  that the post-conviction court failed to deal with certain issues, Summers did not assert
20  that the post-conviction court failed to address this issue.  *See* Supp. Answer, Ex. V. p.
21  ii ("The Court did not deal with certain issues asserted as claims in the petition for post-
22  conviction relief.  She failed to address the issue of a conflict with the court as it related
23  to a change of venue, and she failed to address the improper interest placed on restitution,
24  when the amount of restitution is to this day, still in dispute, and it was improper for
25  interest to be added pursuant to State v. Foy, 176 Ariz. 166, 859 P.2d 789 (App. 1993).").

26

27  [7]The Court notes that the Petition for Post-Conviction Relief and the Petition for
   Review also discussed how counsel needed to be concerned with the maximum sentence
28  exposure that Summers faced.  Supp. Answer, Ex. M, p. 21; Supp. Answer, Ex. V. p. 17.

1    Although Summers asserted in post-conviction proceedings that counsel was

2    ineffective, she did not present this basis as an ineffective assistance of counsel claim.

3    New bases for ineffective assistance of counsel claims that were not raised in the state

4    proceedings are not exhausted. *Moormann*, 426 F.3d at 1056. The Court finds this claim

5    has not been exhausted. Moreover, if Summers were to fairly present this issue in a

6    subsequent Petition for Post-Conviction Relief, such presentation would be untimely.

7    Ariz.R.Crim.P. 32.1 and 32.4(a). Such a new petition, therefore, would be subject to

8    summary dismissal. *Rosario*, 195 Ariz. at 266, 987 P.2d at 228; *Moreno*, 192 Ariz. at

9    135, 962 P.2d at 209. This claim, therefore, is technically exhausted and, therefore,

10   procedurally defaulted. *Park*, 202 F.3d at 1150-51.

11

12   C.   *Ineffective Assistance of Counsel – Failure to Advise Summers that Some of the
     Pleaded-To Claims Could Not be Proven by the State*

13
          Summers asserts that counsel failed to advise Summers that some of the claims that
14
     she was pleading guilty to could not be proven by the state. Respondents argue that this
15
     issue was not presented to the post-conviction court or to the Arizona Court of Appeals.
16
     Summers asserts that her affidavit, attached in support of the Petition for Post-Conviction
17
     Relief, fairly presented the claim.[8] *See* Supp. Answer, Ex. M, internal exhibit A, ¶ 8 ("·
18
     . . I was very uncomfortable pleading to perjury on the Robles Estates, because the
19
     Inventory and Appraisement amount was the correct amount at the time. When I
20
     discussed this with [counsel], he told me not to say anything about that to the court, but
21
     to just plead guilty to the charge."). The Ninth Circuit has not addressed whether merely
22
     referencing a possible claim in an attachment, without argument in support of the claim,
23
     is sufficient to fairly present the claim. *See Insyxiengmay v. Morgan*, 403 F.3d 657 (9th
24
     Cir. 2005) (claims were fully and fairly presented where petitioner presented extensive
25
     argument and authority in support of claims in appendix). Indeed, "a state prisoner does
26

27          [8]The Court notes that the attached copy of the affidavit is not signed. However, a copy
28   of the same affidavit, which is signed, was attached to the Petition for Review.

not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32, 124 S.Ct. at 1351. Although Summers asserted in post-conviction proceedings that counsel was ineffective, she did not present this basis as an ineffective assistance of counsel claim. New bases for ineffective assistance of counsel claims that were not raised in the state proceedings are not exhausted. *Moormann*, 426 F.3d at 1056. The Court finds this claim has not been exhausted. Moreover, if Summers were to fairly present this issue in a subsequent Petition for Post-Conviction Relief, such presentation would be untimely. Ariz.R.Crim.P. 32.1 and 32.4(a). Such a new petition, therefore, would be subject to summary dismissal. *Rosario*, 195 Ariz. at 266, 987 P.2d at 228; *Moreno*, 192 Ariz. at 135, 962 P.2d at 209. This claim is technically exhausted and, therefore, is procedurally defaulted. *Park*, 202 F.3d at 1150-51.

D.    *Ineffective Assistance of Counsel – Failure to Address Sentencing Court's Misunderstanding of the Law as to Consecutive Sentences*

Summers asserts counsel failed to address the sentencing court's presumptions regarding consecutive sentences.[9] Respondents, citing to Ex. R at 17, assert that this claim was presented to the appellate court. That exhibit is the State's Response to the Petition for Post-Conviction Relief. Further, page 17 does not address this claim. Moreover, the Court's review indicates that while this claim was arguably presented to the post-conviction court, *see* Supp. Answer, Ex. M., p. 12, ("[Counsel] stated that, at the time, there was a presumption that the duration of imprisonment for the offenses would

---

[9]The Court notes that Summers has simply failed to provide any information as to the basis of her claim. During the plea proceeding, the court confirmed with counsel which offenses were subject to consecutive sentences and confirmed that Summers was aware of that possibility. Indeed, in informing Summers of the range of sentences, the court stated the range from the low end of concurrent sentences to the high end of consecutive sentences. It is clear the court was aware that the decision of whether to impose a consecutive sentence was in her discretion.

1  be run concurrently, and he found it strange when the court indicated that there were no

2  factors to cause her to consider running them concurrently.  However, [counsel] never

3  challenged that statement."), this claim was not presented to the Arizona Court of

4  Appeals.  Although Summers asserted in post-conviction proceedings that counsel was

5  ineffective, she did not present this basis as an ineffective assistance of counsel claim.

6  New bases for ineffective assistance of counsel claims that were not raised in the state

7  proceedings are not exhausted.  *Moormann*, 426 F.3d at 1056.  The Court finds this claim

8  has not been exhausted.  Moreover, if Summers were to fairly present this issue in a

9  subsequent Petition for Post-Conviction Relief, such presentation would be untimely.

10 Ariz.R.Crim.P. 32.1 and 32.4(a).  Such a new petition, therefore, would be subject to

11 summary dismissal.  *Rosario*, 195 Ariz. at 266, 987 P.2d at 228; *Moreno*, 192 Ariz. at

12 135, 962 P.2d at 209.  This claim is technically exhausted and, therefore, is procedurally

13 defaulted.  *Park*, 202 F.3d at 1150-51.

14

15 E. *Ineffective Assistance of Counsel – Remaining Claims*

16         Additionally, Summers asserts that counsel provided ineffective assistance of

17 counsel as follows:

18         1.   counsel failed to consult with or retain an accountant to review the

19              thousands of pages of documents, many of which related to financial

20              records;

21         2.   counsel failed to properly investigate and rebut the state's accounting

22              testimony;

23         3.   counsel failed to seek a change of venue even though the charges arose

24              from probate and conservatorship matters adjudicated in the Pima County

25              Superior Court;

26         4.   counsel did not seek or obtain a cap on the prison sentence she was facing;

27         5.   counsel was unaware of statutory sentencing changes which applied to

28              offenses that occurred after January 1, 1994, and which substantially

1    reduced the availability of early release credits;

2    6.      counsel misinformed Summers about early release eligibility;

3    7.      counsel failed to adequately investigate or challenge in court Summers'

4            mental capacity to accept a change of plea or otherwise participate in

5            change of plea proceedings;

6    8.      although aware of Summers' symptoms of impaired capacity to rationally

7            evaluate a plea offer, counsel only permitted Summers eight minutes to

8            consider the plea offer before accepting or rejecting it;

9    9.      counsel failed to object to the introduction of inadmissible evidence at the

10           time of sentencing;

11   10.     counsel never discussed the contents of the state's sentencing memorandum

12           with her and did not ask her to assist him in refuting factual allegations

13           contained in the memorandum;

14   11.     counsel never sought a change of venue and failed to voir dire the

15           sentencing judge regarding a memorandum that included damning statement

16           about Summers that was circulated by the presiding probate judge of the

17           Pima County Superior Court, and;

18   12.     counsel failed to object to the assessment of interest on the restitution

19           orders which was prohibited under state law.

20   The Court finds these claims were fairly presented to the state courts and that these claims

21   have been exhausted.

22

23   F.  *Guilty Plea as Not Knowingly, Intelligently and Voluntarily Entered Into – Counsel*
     *Misinforming Summers Regarding Early Release Eligibility*
24
25           Summers asserts that her guilty plea was not knowingly, intelligently, and

26   voluntarily made based on counsel's misinformation to Summer's regarding early-release

27   eligibility.  Respondents argue that this claim was only presented to the state courts as an

28   ineffective assistance of counsel claim.  However, Summers did present this claim to the

1   post-conviction court.  *See* Supp. Answer, Ex. M, p, 22 ("Defense counsel never

2   considered the fact that the charges were post-1995, and he failed to consider that the

3   defendant could be subjected to the maximum sentence available.  If he never considered

4   it, he certainly did not convey adequate information to his client in order for her to make

5   an informed decision whether to accept the plea agreement.").  Additionally, Summers

6   presented this claim to the Arizona Court of Appeals.  *See* Supp. Answer, Ex. V. p, 3.

7   However, Summers did not cite to any federal authority regarding the requirement of a

8   knowing and voluntary plea of guilty in her Petition for Review.  *See Connor*, 404 U.S.

9   at 227-28 (raising a claim that is "somewhat similar" in state court does not fairly present

10  a claim for federal habeas review); *see also Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th

11  Cir. 2006) ("An argument based on a legal theory distinct from that relied upon in the

12  state court does not meet the exhaustion requirement."); *Johnson v. Zenon*, 88 F.3d 828,

13  830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is

14  raising a federal constitutional claim, his federal claim is unexhausted regardless of its

15  similarity to the issues raised in state court.").  Rather, Summers only cited to state

16  authority regarding plea requirements in the state courts.  The Court finds this claim was

17  not "fairly presented" to the state courts. *Anderson*, 459 U.S. at 6 (A claim is "fairly

18  presented" if the petitioner has described the operative facts and legal theories on which

19  his claim is based.).  The Court finds this claim has not been exhausted.

20      Moreover, if Summers were to fairly present this issue in a subsequent Petition for

21  Post-Conviction Relief, such presentation would be untimely.  Ariz.R.Crim.P. 32.1 and

22  32.4(a).  Such a new petition, therefore, would be subject to summary dismissal. *Rosario*,

23  195 Ariz. at 266, 987 P.2d at 228; *Moreno*, 192 Ariz. at 135, 962 P.2d at 209.  This claim

24  is procedurally defaulted and, therefore, technically exhausted.  *Park*, 202 F.3d at 1150-

25  51.

26  . . . . .

27  . . . . .

28

G.  *Guilty Plea as Not Knowingly, Intelligently and Voluntarily Entered Into – Counsel Failing to Inform Summers that Sentences May be Consecutive*

Summers asserts that her guilty plea was not knowingly, intelligently, and voluntarily made because counsel did not inform her that her sentence could be imposed consecutively.  Respondents argue that this issue was not presented to the post-conviction court or to the Arizona Court of Appeals.  Summers asserts that the claim was presented as a failure to provide sufficient information for Summers to conduct a "risk-benefit" analysis.  *See* Supp. Answer, Ex. M, pp.7-8 ("Because of the manner in which the plea was negotiated, the defendant was deprived of the basic information she needed to be able to make an informed decision on whether to accept or reject the plea.  She needed to make the proper risk-benefit analysis in order to make a voluntary, intelligent and reasoned decision of whether to accept or reject the plea."); *see also id.*, at p. 20, *citations omitted* ("It is impossible to effectively perform the risk-benefit analysis if either the risk or the benefit is unknown or erroneous.  The defendant was entitled to rely on the actual facts in order to make a risk-benefit analysis to determine whether to enter into the plea.  Without the proper information from counsel, the defendant was unable to make an intelligent and voluntary plea through the risk-benefit analysis.  She was effectively prevented from make a clear and rational decision whether to plead guilty or withdraw from the plea and proceed to trial.  The defendant needed to be apprised of all aspects of the case, charges, defenses, and potential exposure, so that she would properly weigh the risk versus the benefit in accepting or rejecting the plea.").[10]  However, there is no discussion that the risk-benefit analysis did not include consideration of consecutive sentences based on counsel's ineffectiveness.  Indeed, the only statement possibly related to this issue was set forth in the Petition for Post-Conviction Relief:  "[Counsel] stated that, at the time, there was a presumption that the duration of imprisonment for the

---

[10]The Court notes that the Petition for Post-Conviction Relief and the Petition for Review also discussed how counsel needed to be concerned with the maximum sentence exposure that Summers faced.  Supp. Answer, Ex. M, p. 21; Supp. Answer, Ex. V. p. 17..

offenses would be run concurrently, and he found it strange when the court indicated that there were no factors to cause her to consider running them concurrently. However, [counsel] never challenged that statement." Supp. Answer, Ex. M, p. 12. This discussion addresses whether counsel should have challenged the sentencing court, not whether counsel had discussed consecutive sentences with Summers. Indeed, Summers stated in her Petition for Review that "she knew the available consequences of the plea." Supp. Answer, Ex. V. p. 18. Moreover, in asserting that the post-conviction court failed to deal with certain issues, Summers did not assert that the post-conviction court failed to address this issue. *See* Supp. Answer, Ex. V. p. ii ("The Court did not deal with certain issues asserted as claims in the petition for post-conviction relief. She failed to address the issue of a conflict with the court as it related to a change of venue, and she failed to address the improper interest placed on restitution, when the amount of restitution is to this day, still in dispute, and it was improper for interest to be added pursuant to <u>State v. Foy</u>, 176 Ariz. 166, 859 P.2d 789 (App. 1993).''). This claim was not fairly presented to the state courts. *See Connor*, 404 U.S. at 227-28; *see also Anderson*, 459 U.S. at 6.

Moreover, Summers did not cite to any federal authority regarding the requirement of a knowing and voluntary plea of guilty in her Petition for Review. The Court finds this claim has not been exhausted. Moreover, Summers' claim would be untimely if she would now present it in a subsequent petition. Ariz.R.Crim.P. 32.1 and 32.4(a). Such a new petition, therefore, would be subject to summary dismissal. *Rosario*, 195 Ariz. at 266, 987 P.2d at 228; *Moreno*, 192 Ariz. at 135, 962 P.2d at 209. This claim is procedurally defaulted and, therefore, technically exhausted. *Park*, 202 F.3d at 1150-51.

H. *Guilty Plea as Not Knowingly, Intelligently and Voluntarily Entered Into – Counsel Failing to Adequately Investigate Mental Capacity*

Summers asserts that her guilty plea was not knowingly, intelligently, and voluntarily made because counsel failed to adequately investigate and challenge her mental capacity to accept a change of plea or otherwise participate in change of plea

proceedings.  Respondents do not dispute that this claim was presented to the state courts.
However, the Court's review indicates Summers did not cite to any federal authority
regarding the requirement of a knowing and voluntary plea of guilty in her Petition for
Review.  *See Johnson*, 88 F.3d at 830 ("If a petitioner fails to alert the state court to the
fact that he is raising a federal constitutional claim, his federal claim is unexhausted
regardless of its similarity to the issues raised in state court.").  The Court finds this claim
was not "fairly presented" to the state courts.  The Court finds this claim has not been
exhausted.

Moreover, if Summers were to fairly present this issue in a subsequent Petition for
Post-Conviction Relief, such presentation would be untimely.  Ariz.R.Crim.P. 32.1 and
32.4(a).  Such a new petition, therefore, would be subject to summary dismissal.  *Rosario*,
195 Ariz. at 266, 987 P.2d at 228; *Moreno*, 192 Ariz. at 135, 962 P.2d at 209.  This claim
is procedurally defaulted and, therefore, technically exhausted.  *Park*, 202 F.3d at 1150-
51.

However, because Respondents have not argued that this claim was not fairly
presented to the appellate court, this Court will review this claim.  *See infra* section
VII.E.

I. *Guilty Plea as Not Knowingly, Intelligently and Voluntarily Entered Into – Insufficient Time to Determine Whether to Accept or Reject Plea Offer*

Summers asserts that her guilty plea was not knowingly, intelligently, and
voluntarily made because Summers was not permitted sufficient time to decide whether
to accept or reject the plea offer.  Respondents do not dispute that this claim was
presented to the state courts.  However, the Court's review indicates Summers did not cite
to any federal authority regarding the requirement of a knowing and voluntary plea of
guilty in her Petition for Review.  *See Johnson*, 88 F.3d at 830 ("If a petitioner fails to
alert the state court to the fact that he is raising a federal constitutional claim, his federal
claim is unexhausted regardless of its similarity to the issues raised in state court.").  The

Court finds this claim was not "fairly presented" to the state courts.  The Court finds this claim has not been exhausted.

Moreover, if Summers were to fairly present this issue in a subsequent Petition for Post-Conviction Relief, such presentation would be untimely.  Ariz.R.Crim.P. 32.1 and 32.4(a).  Such a new petition, therefore, would be subject to summary dismissal.  *Rosario*, 195 Ariz. at 266, 987 P.2d at 228; *Moreno*, 192 Ariz. at 135, 962 P.2d at 209.  This claim is procedurally defaulted and, therefore, technically exhausted.  *Park*, 202 F.3d at 1150-51.

However, because Respondents have not argued that this claim was not fairly presented to the appellate court, this Court will review this claim.  *See infra* section VII.E.

J. *Guilty Plea as Not Knowingly, Intelligently and Voluntarily Entered Into – Counsel Failing to Advise Summers that Some of the Charges Could Not be Proven by the State*

Summers asserts that her guilty plea was not knowingly, intelligently, and voluntarily made because counsel did not inform her that the State could not prove some of the charges against her.  Respondents assert this claim was not fairly presented to the state courts.  *See Connor*, 404 U.S. at 227-28; *see also Anderson*, 459 U.S. at 6.  Summers asserts that her affidavit, attached in support of the Petition for Post-Conviction Relief, fairly presented the claim.  *See* Supp. Answer, Ex. M, internal exhibit A, ¶ 8 (". . . I was very uncomfortable pleading to perjury on the Robles Estates, because the Inventory and Appraisement amount was the correct amount at the time.  When I discussed this with [counsel], he told me not to say anything about that to the court, but to just plead guilty to the charge.").  The Ninth Circuit has not addressed whether merely referencing a possible claim in an attachment, without argument in support of the claim, is sufficient to fairly present the claim.  *See Insyxiengmay*; *Baldwin*.  Moreover, Summers did not cite to any federal authority regarding the requirement of a knowing and voluntary plea of guilty in her Petition for Review.  The Court finds this claim has not been exhausted.

- 23 -

1   Moreover, Summers' claim would be untimely if presented in a second petition for post-

2   conviction relief.  Ariz.R.Crim.P. 32.1 and 32.4(a).  Such a new petition, therefore, would

3   be subject to summary dismissal.  *Rosario*, 195 Ariz. at 266, 987 P.2d at 228; *Moreno*,

4   192 Ariz. at 135, 962 P.2d at 209.  This claim is procedurally defaulted and, therefore,

5   technically exhausted.  *Park*, 202 F.3d at 1150-51.

6

7   VI.  *Cause and Prejudice Analysis*

8           As to Summers' procedurally defaulted claims, federal habeas review is barred

9   unless Summers demonstrates "cause for the default and prejudice attributable thereto,

10  or demonstrates that failure to consider the claims will result in a fundamental

11  miscarriage of justice."  *Coleman*, 501 U.S. at 749-750 (citations omitted; internal

12  quotation marks omitted); *Correll v. Stewart*, 137 F.3d 1404, 1411 (9th Cir. 1998), *citing*

13  *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992)

14  (generally, if a petitioner "has failed to develop material facts in state court proceedings,

15  he or she must demonstrate adequate cause for his or her failure and actual prejudice

16  resulting from that failure).  Cause is defined as a "legitimate excuse for the default," and

17  prejudice is defined as "actual harm resulting from the alleged constitutional violation."

18  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991) (citation omitted); *Murray v.*

19  *Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (a showing of

20  cause requires a petitioner to show that "some objective factor external to the defense

21  impeded counsel's efforts" to raise the claim in state court).   Prejudice need not be

22  addressed if a petitioner fails to show cause.  *Murray.*  To bring herself within the narrow

23  class of cases that implicate a fundamental miscarriage of justice, a petitioner "must come

24  forward with sufficient proof of [her] actual innocence[.]"   *Sistrunk v. Armenakis*, 292

25  F.3d 669, 672-73 (9th Cir. 2002), *citations omitted*.  "Actual innocence can be shown

26  when a petitioner 'presents evidence of innocence so strong that a court cannot have

27  confidence in the outcome of the trial unless the court is also satisfied that the trial was

28  free of nonharmless constitutional error.'"  *Sistrunk*, 292 F.3d at 673, *quoting Schlup v.*

1    *Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

2        Summers asserts that ineffective assistance of post-conviction counsel, for failing

3 to raise the defaulted claims, presents cause. *United States v. De La Fuente*, 8 F.3d 1333,

4 1336-37 (9th Cir. 1993). However, Summers has not provided any reason why she did

5 not file a timely successive petition for post-conviction relief alleging her claims. As

6 Summers has argued, such a claim may be accepted by the state courts in a second

7 petition for post-conviction relief where the first petition for post-conviction relief is a

8 form of direct review (i.e., where a petitioner entered a plea of guilty). However,

9 Summers has not argued any basis for this Court to conclude that the state courts would

10 accept an *untimely* petition setting forth such a claim. The Court finds Summers has

11 failed to show (1) cause – any impediments preventing Summers from complying with

12 Arizona's procedural rules, *Murray*, 477 U.S. at 488; (2) prejudice – any constitutional

13 violation so basic as to infect Summers' entire proceedings with error, *United States v.*

14 *Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), or (3) fundamental

15 miscarriage of justice that no reasonable juror could find her guilty, *Schlup*, 513 U.S. at

16 327. Summers' procedural default cannot be excused.

17

18 VII. *Ineffective Assistance of Counsel*

19        To establish a claim of ineffective assistance of counsel, a petitioner must show

20 that counsel's actions fell below an objective standard of reasonableness and that

21 petitioner was prejudiced by the alleged ineffective assistance of counsel. *Strickland v.*

22 *Washington*, 466 U.S. 668, 687, 104 S.Ct. 252, 2064 (1984). In ineffective assistance of

23 counsel claims, the prejudice requirement "focuses on whether counsel's constitutionally

24 ineffective performance affected the outcome of the plea process. In other words, in

25 order to satisfy the 'prejudice' requirement, the defendant must show that there is a

26 reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

27 would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366,

28 370, 88 L.Ed.2d 203 (1985). Further, the Supreme Court has stated that review of

defense counsel's conduct is "highly deferential – and doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S 1, 6, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003).

Summers did state in her Petition for Review that, "[h]ad she understood that she was looking at such a lengthy prison sentence, she would have sought new counsel, and very probably would have gone to trial." Supp. Answer, Ex. V., p.10.  Furthermore, in her affidavit that was attached to the Petition for Post-Conviction Relief and the Petition for Review, Summers stated:

> Had I not received misadvice [sic] from my counsel . . . I would not have entered into the plea.  I would have requested that my plea be withdrawn and I would have proceeded with trial.  In consideration of my age, a twenty year sentence is like a life sentence, therefore, I would have had absolutely nothing to lose by going to trial.

Supp. Answer, Ex. M., internal exhibit A, ¶ 23; Supp. Answer, Ex. V., internal exhibit 3, ¶ 23.  This Court must determine if the state courts unreasonably applied *Strickland* and its progeny.  *See Taylor*; *Bell v. Cone*, 535 U.S. 685, 699, 122 S.Ct. 1843, 1852 (2002).

A. *Ineffective Assistance of Counsel – Accountant*

Summers asserts that counsel failed to consult with or retain an accountant to review the thousands of pages of documents, many of which related to financial records and that counsel failed to properly investigate and rebut the state's accounting testimony at the restitution hearing.  As to these claims, the post-conviction court stated:

> [Summers] next argues that failure to hire an accountant to review the financial data and failure to object to the State's investigator from giving expert testimony constituted ineffective assistance of counsel.
>
> The issues that pertain to the financial loss do not go to the validity of the plea. They go to the issue of restitution.  Whether the amount stolen was two thousand dollars or two million dollars had little to do with the sentence imposed.  The exact amount of restitution was established after multiple and lengthy evidentiary hearings were held.  [Summers] now claims that her lawyer was ineffective in the way he handled those hearings.
>
> The proper measure of an attorney's performance remains whether it was reasonable under prevailing professional norms.  The burden is on [Summers] to

1    show that the performance was both deficient and that the deficient performance
     prejudiced the defense. [*Strickland*.] [Summers] has made numerous assertions in
2    her pleadings, but has not provided any support for her claim that her trial counsel
     fell below the prevailing standards.  She has presented no evidence or affidavits
3    establishing that his conduct fell below the prevailing professional norms or that
     establish at least a colorable claim that his allege deficient performance prejudiced
4    her.

5    Answer, Ex. H, p. 3.  As to these claims, the Arizona Court of Appeals stated:

6         The trial court's order is amply supported by the record before us and
          demonstrates the court correctly resolved this claim. [Citation omitted.] We note,
7         moreover, that, even though trial counsel may find fault with his own performance
          with the benefit of hindsight, Summers has not shown that the amount of
8         restitution the court ordered her to pay would have been different had counsel
          hired an expert and cross-examined the state's witness in some respect.  Based on
9         the record before us, the restitution order is sufficiently supported.

10   Answer, Ex. I, p. 9.  This Court does not find that the state courts' determination that

11   counsel was not ineffective to be objectively unreasonable.  28 U.S.C. § 2254(d); *Bell v.*

12   *Cone*, 535 U.S. at 698-99, 122 S.Ct. at 1852.

13        The plea agreement provided for a restitution range, the amount of restitution was

14   within that range, and Summers has not shown that the amount of restitution would have

15   been different if counsel had not been allegedly ineffective.  Indeed, Summers has "not

16   shown that the amount of restitution the court ordered her to pay would have been

17   different" had counsel hired an accounting expert and more thoroughly cross-examined

18   the State's expert.  *Id*.; *see Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001)

19   (rejecting federal habeas claim that counsel should have retained an expert because

20   petitioner "offered no evidence" that the expert "would have testified on his behalf at

21   trial.  He merely speculates that such an expert could be found.  Such speculation,

22   however, in insufficient to establish prejudice."), *citation omitted*.  Summers asserts that

23   the lack of precision of the restitution alleged by the State (roughly one million dollars

24   to six million dollars) is outside the boundaries that would be tolerated by anyone

25   employing sound accounting practices.  However, Summers has not presented any basis

26   to conclude that the amount of restitution would have been different if an expert would

27   have been hired, i.e., Summers has failed to show that she was prejudiced by the alleged

28   deficiency.  The Court finds Summers is not entitled to habeas relief on these claims of

1    ineffective assistance of counsel.

2

3    B.  *Ineffective Assistance of Counsel – Venue*

4           Summers asserts that counsel was ineffective for failing to seek a change of venue

5    or voir dire the sentencing judge even though the charges arose from probate and

6    conservatorship matters adjudicated in the Pima County Superior Court and the presiding

7    probate judge had issued a memorandum that included a damning statement about

8    Summers.  As to Summers' claim that counsel failed to seek a change of venue, the post-

9    conviction court stated:

10           [Summers'] four remaining claims do not merit discussion:  failure to seek a
             change of venue (the matter was resolved by a plea, not a jury trial, therefore, the
11           claim that [Summers] was entitled to a change of venue is without merit)[.]

12    Answer, Ex. H, p.3.  The appellate court stated:

13           Summers next contends the trial court abused its discretion by summarily denying
             relief on her claim that counsel had been ineffective because he did not seek a
14           change of venue early in the case.  She also claims that, as a consequence, the trial
             court had a conflict and was biased and prejudiced against her.  The trial court
15           rejected these arguments, apparently finding no merit to them because the case had
             been resolved by guilty pleas rather than a trial.  Although the court's reason for
16           denying post-conviction relief is less than clear, nevertheless, the court did not
             abuse it discretion.
17
             These claims were waived by Summers's failure to raise them below, *see*
18           Ariz.R.Crim.P. 32.2(a)(3), and by entering a guilty plea, she waived all
             nonjurisdictional defects.  [Citation omitted.]  We recognize that claims of
19           ineffective assistance of counsel relating to the validity of a guilty plea are not
             waived by the entry of the plea, [citation omitted], but Summers's claims may not
20           be so characterized.  These claims of ineffective assistance of counsel relate to
             counsel's pretrial and pre-guilty plea performance rather than counsel's
21           performance directly connected to the entry of the guilty plea.  The claims are
             therefore waived. And, even assuming the ineffective-assistance-of-counsel claim
22           was not waived, Summers has shown no prejudice resulting from trial counsel's
             failure to seek a change of venue.  That is, she has not shown the outcome would
23           have been different, particularly because her convictions resulted from a knowing,
             voluntary, and intelligent guilty plea.  [Citation omitted.]
24
      Answer, Ex. I, pp. 7-8.  This Court does not find that state court's rulings to be
25
      objectively unreasonable.  28 U.S.C. § 2254(d); *Bell v. Cone*, 535 U.S. at 698-99, 122
26

27

28

S.Ct. at 1852.[11]

As to Summers' claim that counsel was ineffective for failing to seek a change of venue or voir dire the sentencing judge regarding the memorandum from the presiding probate judge, the appellate court mentions the memorandum in its opinion, but does not specifically address this claim. Summers has not alleged that the sentencing court was biased, only that counsel did not question her regarding any potential bias. Indeed, Summers has not set forth any "specific allegations lending support to [her] claim that the [sentencing] judge was actually biased in [her] case." *Bracy v. Gramley*, 520 U.S. 899, 909, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (discussing whether discovery should be permitted); *Poland v. Stewart*, 117 F.3d 1094, 1103 (9th Cir. 1997) (a judge's ruling alone does not show bias or an interest in the outcome). The United States Supreme Court has found that there is a "presumption of honesty and integrity in those serving as adjudicators[.]" *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); *see also Crater v. Galaza*, 491 F.3d 1119, 1131 (9th Cir. 2007) (three circumstances where an appearance of bias, as opposed to actual bias, requires recusal of a judge: judge has "a direct personal, substantial pecuniary interest" in reaching a conclusion against petitioner, judge is "embroiled in a running, bitter controversy" with petitioner or judge is "part of the accusatory process"), *citation omitted*; *Larson v. Palmateer* 515 F.3d 1057, 1067 (9th Cir. 2008). Summers has not set forth any basis to conclude that the sentencing court was biased. Moreover, Summers has not challenged the accuracy of the memorandum or asserted why the fact that her criminal activity affected the Pima County Superior Court is not a valid and legitimate consideration of the sentencing court. Therefore, the Court finds that Summers, despite her assertion that the

---

[11]The appellate court found that this claim was waived on state procedural grounds. Therefore, this claim being procedurally barred on State procedural grounds, this claim is procedurally defaulted. *See Carringer v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992). Although the state court found this claim waived on state procedural grounds, the court addressed the merits; this Court, therefore, will review the finding.

1   prejudice is self-evident because she is serving a term which amounts to nearly life

2   imprisonment, has failed to show that she has been prejudiced by any alleged deficiency

3   of counsel for failing to voir dire the sentencing judge.  Further, in light of no showing

4   of interest or bias on the part of the sentencing judge, Summers has failed to make any

5   showing that counsel had any basis for moving for a change of venue.

6

7   C. *Ineffective Assistance of Counsel – Cap on Prison Sentence*

8        Summers asserts that counsel was ineffective for failing to seek or obtain a cap on

9   the prison sentence Summers was facing.  In discussing this issue with other claims, the

10  Arizona Court of Appeals stated:

11       On review, Summers contends that the affidavits she submitted in support of her
         Rule 32 petition established, at the very least, a colorable claim that counsel had
12       been ineffective.  To establish a claim of ineffective assistance of counsel, a
         defendant must show that counsel's performance was both deficient, as measured
13       by prevailing professional norms, and prejudicial.  [Citations omitted.] . . .

14       * * * * *

15       * * * * *

16       The affidavit of attorney Stanton Bloom, whom Summers had consulted about the
         plea offer sometime before accepting it, did not establish a colorable claim for
17       relief. . . . Moreover, that Bloom would have sought to have the state agree to "a
         cap on the sentence" does not mean defense counsel was ineffective in failing to
18       secure an agreement of that sort, particularly because the state had no obligation
         to make such an offer.
19
20  Answer, Ex. I, pp. 4-7.  However, under the terms of the plea agreement, Summers could

21  not have been sentenced to more than 32.5 years.  Summers has not pointed to any federal

22  authority that requires a defense attorney to negotiate a plea agreement or sentencing cap

23  . . . . presumably because there is no authority for the assertion that there is an obligation

24  on behalf of the State to negotiate or agree to a sentencing cap.  *See Weatherford v.*

25  *Bursey*, 429 U.S. 545, 561 (1977) ("there is no constitutional right to plea bargain");

26  *United States v. Estrada-Plata*, 57 F.3d 757, 760 (9th Cir. 1995) ("It is well-settled that

27  there is no constitutional right to a plea bargain, and the decision whether to offer a plea

28  bargain is a matter of prosecutorial discretion."), *internal quotation marks omitted*.

Moreover, Summers cannot show that she was prejudiced by this alleged

deficiency because the record, as set forth in the Gregory J. Kuykendall draft affidavit,

makes it clear that Summers was not interested in such an agreement:

> Marilyn Summers steadfastly refused to consider any plea agreement which did not provide for probation. Because no such plea agreement was ever offered, Marilyn Summers did not accept a probation available plea. She would only consider accepting a plea offer with a very low minimum mandatory prison time requirement. The prosecution would only offer such a plea if the maximum exposure was correspondingly high. The prosecution would have lowered the maximum exposure if Marilyn Summers would have agreed to accept a plea offer with a higher minimum exposure, according to conversations I had during plea negotiations with prosecutor John Evans. I strongly recommended to Marilyn Summers that she reduce her maximum exposure by agreeing to increase her minimum exposure. I explained receiving the one year minimum sentence under the plea agreement she ultimately accepted was unlikely in the extreme. I also believed she was taking an unreasonable risk of receiving a very high sentence if she accepted a plea agreement which allowed for such a sentence to be given.

Supp. Answer, Ex. N, internal exhibits C and C-1. This Court does not find that state

court's rulings to be objectively unreasonable. 28 U.S.C. § 2254(d); *Bell v. Cone*, 535

U.S. at 698-99, 122 S.Ct. at 1852.


D. *Ineffective Assistance of Counsel – Early Release Eligibility*

Summers asserts that counsel was ineffective for being unaware of statutory

sentencing changes which applied to offenses that occurred after January 1, 1994, and

which substantially reduced the availability of early release credits and that counsel

misinformed Summers about early release eligibility. As to Summers' claim that counsel

misinformed her about early release eligibility, the United States Supreme Court has

stated in similar circumstances:

> Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. Indeed, petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted.

*Hill*, 474 U.S. at 60, 106 S.Ct. at 371. Summers stated in her Petition for Review that,

1  "[h]ad she understood that she was looking at such a lengthy prison sentence, she would

2  have sought new counsel, and very probably would have gone to trial." Supp. Answer,

3  Ex. V., p.10. In her affidavit that was attached to the Petition for Post-Conviction Relief

4  and the Petition for Review, Summers stated:

5        Had I not received misadvice [sic] from my counsel . . . I would not have entered
         into the plea. I would have requested that my plea be withdrawn and I would have

6        proceeded with trial. In consideration of my age, a twenty year sentence is like a
         life sentence, therefore, I would have had absolutely nothing to lose by going to

7        trial.

8  Supp. Answer, Ex. M., internal exhibit A, ¶ 23; Supp. Answer, Ex. V., internal exhibit

9  3, ¶ 23. The Court notes that the affidavit does not specify misadvise regarding early

10  release eligibility. Indeed, Summers mentions a twenty year sentence . . . not serving

11  85% of a twenty year sentence. Moreover, the Ninth Circuit has noted that "the Supreme

12  Court has never held that the United States Constitution requires furnishing a defendant

13  with information about parole eligibility in order for a guilty plea to be deemed

14  voluntary." *Lambert v. Blodgett*, 392 F.3d 943, 981 n. 26 (9th Cir. 2004). Indeed the

15  Ninth Circuit cited the Fifth Circuit for the assertion that "where a petitioner's mistaken

16  belief about parole eligibility was not based on any promise by the defense attorney, the

17  prosecutor, or the court and the petitioner understood the maximum sentence he could

18  receive, the guilty plea should not be set aside[.]" *Id.*, *citing Spinelli v. Collins*, 992 F.2d

19  559, 561 (5th Cir. 1993).

20        Moreover, the same early release eligibility would apply had Summers proceeded

21  to trial and been convicted. Indeed, there was no requirement for the State to have agreed

22  with a hypothetical proposal to have Summers plead guilty to pre-January 1, 1994,

23  conduct so Summers would be eligible for an earlier release. Additionally, the Court

24  notes that a sentencing correction had been made so that sentence for the July 27, 1992,

25  perjury by a false sworn statement would be served on the basis of 50% rather than the

26  85% of the sentenced time. The Court finds Summers has failed to show that she has

27  been prejudiced by this alleged deficiency. This Court finds the state courts' failure to

28  find that Summers was entitled to relief on this claim is not objectively unreasonable. 28

1   U.S.C. § 2254(d); *Bell v. Cone*, 535 U.S. at 698-99, 122 S.Ct. at 1852.

2

3   E.  *Ineffective Assistance of Counsel and Plea Proceedings – Mental Capacity*

4            Summers asserts that counsel failed to adequately investigate or challenge in court

5   Summers' mental capacity to accept a change of plea or otherwise participate in change

6   of plea proceedings and that, although aware of Summers' symptoms of impaired capacity

7   to rationally evaluate a plea offer, counsel only permitted Summers eight minutes to

8   consider the plea offer before accepting or rejecting it.  Summers also asserts that her

9   guilty plea was not knowingly, intelligently and voluntarily made because counsel failed

10  to adequately investigate and challenge her mental capacity to accept a change of plea or

11  otherwise participate in change of plea proceedings and Summers was not permitted

12  sufficient time to decide whether to accept or reject the plea offer.  As to these claims, the

13  post-conviction court stated:

14       There is no dispute that [Summers] believed at the time she entered her plea of
         guilty that she would receive a considerably more lenient sentence than what was
15       eventually imposed.  However, the record is clear that she was apprised in open
         court of the consequences of her plea, and she has failed to present a colorable
16       claim as to whether her plea was knowingly and voluntarily made.

17       A plea agreement is considered knowingly and voluntarily made where a
         defendant is represented by counsel, has advised the Court that she has had an
18       opportunity to discuss the consequences of the plea with her attorney, and has
         affirmatively answered the trial Court's questions as to whether she fully
19       understands the nature and consequences of the plea.  All of that took place in this
         case.
20
         [Summers] now claims that she was impaired at the time of the plea.  There is no
21       evidence of the existence of any such substantial impairment.  Prior to signing the
         plea, trial counsel had [Summers] examined on two separate occasions by clinical
22       psychologist Dr. Perrin.  Dr. Perrin's report stated that there was no "indication
         that [Summers] was experiencing a psychotic disorder related to impaired brain
23       function."  Dr. Perrin performed a clinical examination, conducted mental status
         interviews, administered four standard psychological tests, conducted telephone
24       interviews with [Summers'] fiance and son, and reviewed other doctors' reports.
         [Summers'] claim is based on hindsight, not on a colorable claim of
25       involuntariness, and therefore, she is not entitled to an evidentiary hearing on that
         claim.
26
         * * * * *
27
         * * * * *
28

- 33 -

1
2
3
4
5

The proper measure of an attorney's performance remains whether it was reasonable under prevailing professional norms.  The burden is on [Summers] to show that the performance was both deficient and that the deficient performance prejudiced the defense.  [*Strickland*, 466 U.S. at 691-93. 697.]  [Summers] has made numerous assertions in her pleadings, but has not provided any support for her claim that her trial counsel fell below the prevailing standards.  She has presented no evidence of affidavits establishing that his conduct fell below the prevailing professional norms or that establish at least a colorable claim that his alleged deficient performance prejudiced her.

6
7
8
9
10

"In order to be entitled to an evidentiary hearing, (a petitioner) must establish a 'colorable claim', one which factually has an appearance of validity in that if the factual allegations were true, he would be entitled to relief."  [Citations omitted.]  Additionally, no hearing is required "based on mere generalizations and unsubstantiated claims . . .".  [Citation omitted.]  The Court is aware of and has read the self critical affidavit of [Summers'] attorney, Greg Kuykendall, but the Court does not believe that such an affidavit alone raises a colorable claim as to ineffectiveness on the part of her attorney on any issue.

11
12
13
14
15
16

[Summers'] four remaining claims do not merit discussion:  failure to seek a change of venue (the matter was resolved by a plea, not a jury trial, therefore, the claim that [Summers] was entitled to a change of venue is without merit); the claim of prejudice failing to see the State's sentencing memorandum (even if true, the memorandum was prepared AFTER the change of plea hearing and so it could not have affected her decision to enter the plea); ineffectiveness with regard to mitigation (the inclusion of the additional mitigation suggested in [Summers'] petition, in light of the aggravating factors, would not have had an impact on the decision rendered); and the claim that interest could not be imposed on the restitution figure (the plea agreement specifically called for the payment of interest and <u>State v. Foy</u>, 176 Ariz. 1766, 859 P.2d 789 (1993) is inapplicable).

17

Answer, Ex. H. pp. 2-4.  As to these claims, the Arizona Court of Appeals stated:

18
19
20
21
22
23
24

On review, Summers contends that the affidavits she submitted in support of her Rule 32 petition established, at the very least, a colorable claim that counsel had been ineffective.  To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was both deficient, as measured by prevailing professional norms, and prejudicial.  [Citations omitted.]  When a defendant claims ineffective assistance of counsel in connection with the entry of a guilty plea, the defendant must establish that counsel gave the defendant incorrect advice or failed to give information the defendant required to make an informed decision on accepting the plea agreement.  [Citation omitted.]  To be entitled to an evidentiary hearing on such a claim, a defendant must present more than a conclusory assertion that counsel failed to adequately communicate the agreement that was offered or the consequences of conviction.  [Citation omitted.]  "A petitioner need not provide detailed evidence, but must provide specific factual allegations that, if true, would entitle him to relief."  [Citation omitted.]

25
26
27
28

The trial court did not abuse its discretion in concluding that Summers had failed to raise a colorable claim for relief.  At best, the record shows that defense counsel second-guessed himself for not having inquired further about Summers's mental state.  *See State v. Ysea*, 191 Ariz. 372, ¶ 16, 956 P.2d 499, ¶ 16 (1998) (claim of ineffective assistance of counsel should not be evaluated "with the magnifying glass of hindsight"; rather, performance should be viewed in context of circumstances surrounding offense and prevailing professional norms at time

1   defendant entered guilty plea).  And, although counsel had believed Summers was
2   depressed and distracted, he did not state in his affidavit that she had appeared to
    be incapable of making an informed decision about accepting a plea agreement
3   involving five felony counts rather than facing trial on more than eighty counts.

4   Moreover, Dr. Geffen's report does not establish that Summers had been in such
    a state that she could not have made a rational decision about accepting the plea
5   agreement, particularly given the information about her mental state that defense
    counsel already knew, as the court noted in its minute entry.  Indeed, at the
6   change-of-plea hearing, the prosecutor pointed out that Summers had mental
    health problems and asked the court to establish on the record the medications
7   Summers was taking, which the court did.  Dr. Geffen confirmed that Summers
    had had a difficult time coming to terms with what she had done because it
8   shattered her delusions of grandeur, which had developed from her personality
    disorder and a somewhat difficult childhood.  But nothing in his report supports
9   the claim that her mental status was such that she could not have understood what
    was taking place and that she was unable to knowingly, voluntarily, and
10  intelligently enter a guilty plea.  Summers has not shown precisely what it is
    counsel would have been able to do differently had he had Dr. Geffen's report.

11  * * * * *

12  . . . Summers does not claim that she was misinformed about crucial sentencing
    consequences; rather, she complains in general terms that she was in such a state
13  that counsel should have explained the plea agreement differently. She asserts that
    she received correct information about the sentencing parameters and that,
14  apparently, counsel had been more than hopeful, if not overly optimistic, that she
    would receive sentences appreciably shorter than the ones imposed.
15
    The affidavit of attorney Stanton Bloom, whom Summers had consulted about the
16  plea offer sometime before accepting it, did not establish a colorable claim for
    relief.  Although Bloom maintained that Summers had been confused and had not
17  appeared to understand the plea offer when the two had spoken, he did not provide
    information about her state of mind at the change-of-plea hearing or about whether
18  defense counsel had been able to explain the offer sufficiently to her.  Moreover,
    that Bloom would have sought to have the state agree to "a cap on the sentence"
19  does not mean defense counsel was ineffective in failing to secure an agreement
    of that sort, particularly because the state had no obligation to make such an offer.
20   Similarly, that Summers' friend had found Summers to be unfocused, depressed,
    and even suicidal during the year the charges were pending does not negate the
21  court's finding at the change-of-pea hearing that the guilty plea was knowing,
    voluntary, and intelligent.
22
    Moreover, the judge who accepted the guilty plea was the same judge who
23  considered the Rule 32 petition. She had explained the sentencing possibilities at
    the change-of-plea hearing and had been given Summers's assurance that she
24  understood the sentencing ranges and that no promises had been made about the
    sentences. The trial judge had had the opportunity to observe Summers and assess
25  her demeanor during the hearing and had implicitly found no reason to believe that
    Summers, an experienced paralegal, had not understood what was taking place
26  because she was confused or depressed.  That Summers and her attorney were
    surprised by the severity of the sentences does not invalidate her guilty plea, nor
27  does it establish a colorable claim for relief entitling her to an evidentiary hearing.

28  Answer, Ex. I, pp. 4-7.

1    Moreover, Summers informed the change-of-plea court that she had a chance to

2    read the plea agreement "before coming to court here today" and reviewed it with her

3    attorney.   Answer, Ex. D, p. 3.[12]   Summers also informed the court that, with the

4    assistance of counsel, she felt that she understood the terms of the plea agreement.   The

5    court also confirmed that Summers understood the sentencing ranges for the offenses.

6    In the discussion regarding possible sentences, the court informed Summers that the

7    agreement provided for a stipulated sentence of probation (up to seven years) for the

8    offense of fraudulent scheme and artifice.   As to the perjury offenses, the court informed

9    Summers that she would be sentencing Summers to prison on those counts and that the

10    sentences could be from one year to three and three-quarters years.   The court confirmed

11    with counsel that the offenses could be "stacked" and then informed Summers she was

12    looking at a sentencing range of one year to seven and a half years.   As to the theft by

13    control or by conversion offenses, the court informed Summers that the options were

14    probation, prison, or probation plus jail time.   The court further informed Summers that

15    if she decided prison was appropriate on those counts, the range was from three years to

16    12 and a half years.   The court again informed Summers that the sentences could be

17    stacked, therefore with a range of three to 25 years.   Summers stated that she understood

18    the sentencing ranges.   Counsel and the court discussed a stipulated restitution range of

19    1.1 million dollars to six million dollars, including six-percent interest.   Summers

20    indicated that she understood the restitution cap.[13]   Additionally, when asked by the court,

21    _____

22    [12]The Ninth Circuit has noted that, "[i]n accepting [defendant's] plea, the state trial court
conducted a thorough plea colloquy . . . In a case where the defendant decided to plead guilty

23    after trial had begun, the Tenth Circuit rejected the defendant's claim that the limitations on time

24    for him to consider a plea bargain rendered it involuntary, relying in part on the defendant's
'participation in a plea colloquy that leaves little doubt that his plea was knowing and voluntary.'

25    *Doe v. Woodford*, 508 F.3d 563, 570-71 (9th Cir. 2007) (citation and internal punctuation

26    omitted).

27    [13]The Court notes that Ex. E to the Answer and Ex. R, internal exhibit A, to the
Supplemental Answer are unsigned copies of a plea agreement.   These agreements indicate

28    a cap of four million dollars as to restitution.   These documents appear to be the agreement

1  Summers indicated that she was pleading guilty of her own free will and that no one had

2  promised her anything different or better than what was in the written plea agreement.

3  An avowal in a court of law that a plea is being entered into voluntarily, and without any

4  outside promises or threats, carries a strong presumption of veracity in subsequent

5  pleadings attacking a plea. *See United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir.

6  2008).

7       Additionally, not only did the appellate court find that nothing in Dr. Geffen's

8  report supported her claim that her mental status was such that she could not have

9  knowingly, voluntarily, and intelligently entered a guilty plea, but that Summers had

10  failed to show precisely what counsel could have done differently had he had Dr.

11  Geffen's report.   Indeed, defense counsel had referred Summers to Dr. Perrin

12  (approximately one month before the change of plea) who stated that there were no

13  indications that Summers was experiencing a psychotic disorder or a disorder related to

14  impaired brain function, that Summers' attention, concentration, and memory abilities

15  were grossly intact, and that there were no indications that Summers was experiencing

16  auditory or visual hallucinations, delusions, or other signs of psychosis or mania at the

17  time of the examination.  Supp. Answer, Ex. R., internal exhibit.  Additionally, the Court

18  notes that Summers had the opportunity to speak with a different attorney (Stanton

19  Bloom) regarding the plea offer before the change of plea proceedings – in writing to the

20  sentencing judge regarding Summers prior to the sentencing, Mr. Bloom did not raise any

21  concerns that Summers could not have knowingly, voluntarily, and intelligently entered

22  a guilty plea.  *Id.*  The Court also considers that, although Summers asserts that counsel

23

24  discussed during the change-of-plea proceeding that was not the ultimate agreement of the
25  parties.  The Court, therefore, does not rely on the plea agreement in the record for any
26  purpose (e.g., although Summers indicated during the plea proceeding that she agreed to the
special terms of the plea agreement, the inclusion of possible consecutive sentences as a
27  special term cannot be confirmed to have been agreed to by Summers in the written plea
agreement).  The Court, therefore, relies on the transcript of the change-of-plea hearing in
28  considering this habeas petition.

only permitted her eight minutes to consider the plea offer before accepting or rejecting

it, this argument fails to acknowledge that the parties had taken the time to engage in

settlement negotiations and Summers had time to consult with Mr. Bloom.

Moreover, the United States Supreme Court has stated:

> The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into [her] decision.   A defendant is not entitled to withdraw [her] plea merely because [she] discovers long after the plea has been accepted that [her] calculus misapprehended the quality of the States's case or the likely penalties attached to alternative courses of action.

*Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970).

 "[N]othing in the record impeaches [Summers'] plea or suggests that [her] admissions

in open court were anything but the truth."   *Brady*, 397 U.S. at 758, 90 S.Ct. at 1474.

Indeed, Summers' "[s]olemn declarations in open court carry a strong presumption of

verity."   *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987).   This Court does

not find that the state court rulings were objectively unreasonable.   28 U.S.C. § 2254(d);

*Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002)

(habeas court is not to make its own independent judgment, but is to determine whether

state court applied federal authority in an objectively unreasonable manner). The Court

finds that Summers has failed to show that she is entitled to habeas relief on these claims.


F.   *Ineffective Assistance of Counsel – Sentencing*

Summers asserts that counsel failed to object to the introduction of inadmissible

evidence at the time of sentencing, never discussed the contents of the state's sentencing

memorandum with her, and did not ask her to assist him in refuting factual allegations

contained in the memorandum.   Summers also asserts that counsel was ineffective for

failing to object to the assessment of interest on the restitution award.   As to these claims,

Summers has not presented any clearly established federal authority that has extended the

right to effective assistance of counsel at trial or plea proceeding to a right to the effective

assistance of counsel at a noncapital sentencing.   *See Davis v. Grigas*, 443 F.3d 1155,

1158 (9th Cir.. 2006) (although the state court had adopted the *Strickland* standard for its

noncapital sentencing proceedings, "because there [was] no clearly established Supreme

Court precedent that applies to this context, [the court was] unable to grant [petitioner's]

habeas relief on this ground"). Federal habeas relief is not available on this claim. *See*

28 U.S.C. § 2254(d); *Reed*, 512 U.S. at 347; *Williams*, 529 U.S. at 412.

Moreover, as to Summers' claims that counsel failed to object to the introduction

of inadmissible evidence at the time of sentencing, never discussed the contents of the

state's sentencing memorandum with her, and did not ask her to assist him in refuting

factual allegations contained in the memorandum, the post-conviction court stated:

> [Summers'] four remaining claims do not merit discussion: . . . the claim of
> prejudice failing to see the State's sentencing memorandum (even if true, the
> memorandum was prepared AFTER the change of plea hearing and so it could not
> have affected her decision to enter the plea); ineffectiveness with regard to
> mitigation (the inclusion of the additional mitigation suggested in [Summers']
> petition, in light of the aggravating factors, would not have had an impact on the
> decision rendered)[.]

Answer, Ex. H. pp. 3-4. As to these claims, the Arizona Court of Appeals stated:

> Finally, the trial court properly rejected the claim that counsel failed adequately
> to present evidence in mitigation. There is simply no support for such a claim.
> The mitigating circumstances were before the court, and the court clearly
> considered them. The court referred to the "substantial family and community
> support" for Summers, her efforts to repay the victims, and her stated remorse.
> Counsel pointed out these and other factors to the court, urging the court to impose
> minimum terms so Summers could work and repay the victims. The sentence were
> well within the statutory ranges, and the court carefully considered all relevant
> sentencing factors in imposing the terms it did. The court's outrage at what
> Summers had done was clear. The court stated:
>
> > Your champions today in the court, your champions at the aggravation
> > hearing were the very wealthy, educated, and affluent from our community.
> > The victims, however, that you preyed upon were the poor, the uneducated,
> > the mentally and physically handicapped children, the infirm, the children
> > of our community, and the aged. You even preyed on the desperate and the
> > dead.
> >
> > You have commented and your friends have commented, that these were
> > mistakes and legal difficulties that you found yourself in. I find them not
> > to be mere mistakes or legal difficulties; these were calculated crimes
> > against real human beings and for no other purpose that this Court can
> > discern but . . . to finance a luxurious lifestyle.
> >
> > The letters of support far outnumbered any letters or comments I got from
> > the victims in this case. And it's interesting, because that even goes to what
> > this case was about: You preyed on the silent ones.

> The court did not abuse its broad sentencing discretion. [Citation omitted.]
>
> It was for the trial court to weigh the factors, which it did, considering the tremendous impact Summers's conduct had had on the victims and how egregious her abuse of their trust had been. [Citation omitted.] Implicit in the court's denial of post-conviction relief is that none of the things Summers suggested counsel should have done would have changed the sentences the court imposed, such as a different cross-examination of some of the witnesses at the sentencing hearing or arguing that some of the witnesses were not "victims" and should not have been permitted to testify. Again, that the sentences were longer than Summers or her lawyer might have expected or hoped for does not mean the court abused its discretion in imposing them or in denying post-conviction relief.

Answer, Ex. I, pp. 9-11. This Court does not find that the state courts' determination that counsel was not ineffective to be objectively unreasonable. 28 U.S.C. § 2254(d); *Bell v. Cone*, 535 U.S. at 698-99, 122 S.Ct. at 1852. Summers has not provided any details as to what factual allegations she may have been able to refute or how her views as to the sentencing memorandum would have changed the result. Moreover, because any "reliable, relevant evidence, including hearsay, in order to show aggravating or mitigating circumstances," Ariz.R.Crim.P. 26.7(b); *State v. Marquez*, 127 Ariz. 3, 617 P.2d 787 (App. 1980) (whether hearsay evidence is reliable is largely a matter of discretion of trial court); *see also United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007) (Rules of Evidence do not apply to sentencing proceedings), is admissible, Summers has failed to show that she was prejudiced by any alleged deficiency of counsel. The Court finds Summers is not entitled to habeas relief on these claims.

As to Summers' claim that counsel failed to object to the assessment of interest on the restitution orders, the post-conviction court stated:

> The issues that pertain to the financial loss do not go to the validity of the plea. They go to the issue of restitution. Whether the amount stolen was two thousand dollars or two million dollars had little to do with the sentence imposed. The exact amount of restitution was established after multiple and lengthy evidentiary hearings were held. [Summers] now claims that her lawyer was ineffective in the way he handled those hearings.
>
> The proper measure of an attorney's performance remains whether it was reasonable under prevailing professional norms. The burden is on [Summers] to show that the performance was both deficient and that the deficient performance prejudiced the defense. [*Strickland.*] [Summers] has made numerous assertions in her pleadings, but has not provided any support for her claim that her trial counsel fell below the prevailing standards. She has presented no evidence or affidavits establishing that his conduct fell below the prevailing professional norms or that

- 40 -

1  establish at least a colorable claim that his allege deficient performance prejudiced
2  her.

3  * * * * *

4  [Summers'] four remaining claims do not merit discussion: . . . the claim that
   interest could not be imposed on the restitution figure (the plea agreement
5  specifically called for the payment of interest and <u>State v. Foy</u>, 176 Ariz. 1766,
   859 P.2d 789 (1993) is inapplicable).

6  Answer, Ex. H, pp. 3-4.  As to this claim, the Arizona Court of Appeals stated:

7  . . . As the state points out, the restitution order, which included interest, was in
   accordance with the terms of the plea agreement.  And, it is authorized by A.R.S.
8  § 13-603(C).

9  Answer, Ex. I, p. 11.  This Court does not find that the state courts' determination that

10 counsel was not ineffective to be objectively unreasonable.  28 U.S.C. § 2254(d); *Bell v.*

11 *Cone*, 535 U.S. at 698-99, 122 S.Ct. at 1852.  Summers' claim that the interest order was

12 prohibited by state law does not present an issue that violates the Constitution, laws, or

13 treaties of the United States.  *See Reed v. Farley*, 512 U.S. at 347, 114 S.Ct. at 2296; 28

14 U.S.C. § 2254(d).  The Court finds Summers is not entitled to habeas relief on this claim.

15

16     Accordingly, IT IS ORDERED:

17     1.     Summers' Motion for Ruling [Doc. # 32] is GRANTED;

18     2.     Summers' Amended Petition for Writ of Habeas Corpus pursuant to 28

19 U.S.C. § 2254 habeas petition is DENIED;

20     3.     This matter is DISMISSED with prejudice, and;

21     4.     The Clerk of the Court shall enter judgment and shall then close its file in

22 this matter.

23     DATED this 2nd day of June, 2009.

24

25

26     _____
       Cindy K. Jorgenson
27     United States District Judge

28